ERVIN, Judge.
The petitioner has as its members the electric power companies of Florida. Respondents are the Governor and Cabinet, the Environmental Regulation Commission and the Department of Environmental Regulation. This court is called on to construe in two respects Section 403.804(2), Florida Statutes (1975), which reads:
The commission shall direct the department to have a study conducted of the economic and environmental impact which sets forth the benefits and costs to the public of Any standard existing on July 1, 1975, which sets a stricter or more stringent standard than one which has been set by federal agencies pursuant to federal law or regulation. All such studies shall be submitted to the governor and cabinet no later than March 1, 1976. Such studies as are provided for in this paragraph shall be submitted to the commission, who shall initially adopt the standards. Final action shall be by the governor and cabinet, who shall accept, reject, modify or remand for further proceedings the standard within 60 days from the submission. Such review shall be appellate in nature. Hearings shall be in accordance with the provisions of chapter 120.
We are asked to decide (1) whether the Cabinet properly exercised its appellate review, and (2) whether the Commission correctly selected standards which are stricter or more stringent than those set by federal law or regulation.
In January, 1976, the Department submitted to the Commission a list of nine department standards that it felt were stricter than federal law. Various industry spokesmen, including petitioner, objected to the list, contending it did not include all the standards that are more restrictive in Florida than in other parts of the country. The Department reasoned: where federal agencies had not set an environmental standard, or had merely approved or adopted a state department standard, a department standard could not be “stricter . . . than one which has been set by federal agencies pursuant to federal law or regulation.” After a workshop, the Department added two more standards to the list of “stricter” standards requiring studies. These were approved by the Commission. The Commission revised seven of the eleven “stricter standards” so that only four department standards remained “stricter” than federal standards.
On February 1, 1977, the Cabinet met to take final action on the four remaining department standards. Petitioner raised arguments and filed a brief urging the Cabinet to reject the Commission’s and the Department’s narrow interpretation of the statute section. Petitioner urged that the Department be ordered to conduct economic and environmental impact studies on certain state standards that should have been identified as more stringent than federal standards. The Cabinet granted a motion to strike the petitioner’s brief. It found:
Under Section 403.804(2), the Governor and Cabinet have been granted only the power to “accept, reject, modify or remand” standards submitted by the Environmental Regulation Commission which the Commission has determined to be more stringent than federal standards. The Governor and Cabinet have no jurisdiction granted, expressly or by necessary implication, to hear appeals from determinations by the Environmental Regula *1188 tion Commission whether a department standard is stricter than a corresponding federal standard. . . . Review of such determinations by the judiciary are amply provided for pursuant to Chapter 120, Florida Statutes.
The Governor and Cabinet took action not relevant here on the four remaining stricter standards. The Commission was also requested to issue an order identifying those department standards not found to be stricter than federal standards.
We find the Governor and Cabinet correctly refused to consider whether additional state environmental standards were more stringent than corresponding federal standards. Section 403.804(2) gives the Governor and Cabinet authority to review only those regulations submitted by the Commission. The intent behind the statute was to have policy decisions on Florida’s environmental regulations made by statewide elected officials — aided by cost-benefit analyses prepared by the Department. The Governor and Cabinet lack the technical expertise as well as the statutory authority to determine which of the many state standards are indeed more stringent.
The issues as framed by the parties do not require a complete disentanglement of the complex web of federal-state regulations. Petitioner simply asks us to determine as a matter of law (1) if a state standard approved by the federal Environmental Protection Agency (EPA) can be more stringent than a federal standard, and (2) if a state standard which limits the same pollutant from the same source as a federal standard, but by a different method, can be compared to determine which is more stringent. We have jurisdiction by virtue of timely petition from the Commission’s order detailing those standards not submitted to the Governor and Cabinet.
For a Florida standard to be “a stricter or more stringent standard than one which has been set by federal agencies pursuant to federal law or regulation”, the federal standard must be in counterpoise to the state standard. However, in many instances federal standards interlock with, but do not necessarily correspond with, state standards. For example, the federal Water Pollution Control Act Amendments of 1972, Public Law 92-500, 33 U.S.C. § 1361 et seq., require all discharges of pollutants to meet technology-based effluent limitations set by the EPA, as well as the ambient water quality standards adopted by the states and approved by EPA. A discharger may be required to achieve a greater reduction in effluent than the federal standard requires if the prevailing water quality standards so require. But this does not mean the federal effluent standards can be compared with Florida’s water quality standards. Presumably the amount of effluent that can be discharged into a body of water before water quality standards are violated will depend upon many factors, such as the size of the body, other pollution sources, etc. The major problem is that there are no federal water quality standards independently set by EPA against which Florida’s standards can be compared to determine which is “stricter.” On the other hand, Florida’s air quality standards were included in the study. The Clean Air Act of 1970, Public Law No. 91-604, 42 U.S.C. § 1857 et seq., required the EPA to set national primary and secondary ambient air quality standards. These independently set national standards can be directly compared with the state ambient air standards. This was done by the Department and it was determined certain state standards were stricter than their federal counterparts, requiring, therefore, a study under Section 403.804(2).
In the same sense, we cannot find as a matter of law Florida standards are stricter when state and federal standards regulate a pollutant by different methods. For example, thermal pollution, the artificial heating of natural waters by industrial discharge, is dealt with differently under national and state regulations. EPA requires a certain type water cooling system which must be installed at new power plants. The Department simply requires that heated water having a temperature at the point of discharge more than five de *1189 grees Fahrenheit higher than the natural temperature of a stream shall not be discharged into the stream. Fla.Admin.Code R. 17-3.05(3)(d)(i). Whether the Florida standards are more restrictive than their federal counterparts will depend on such factors as the natural temperature of the stream and the level of activity in the plant. We cannot say the Department erred in not finding the Florida standards more stringent.
We find no error in the Department’s determination of those standards requiring study under Section 403.804(2). The petition for review is
DENIED.
BOYER, Acting C. J. and MILLS, J., concur.